# 06 CV 4727

# JUDGE STEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                             :

MICHELE ROACH,                        ____ Civ.
                             :

              Plaintiff,     :    COMPLAINT

      - against -            :

REUTERS AMERICA, INC.,        :

                             **PLAINTIFF DEMANDS
TRIAL BY JURY**
              Defendants.   :

-----------------------------------------------------------------x

Plaintiff Michele Roach, by her attorneys, Liddle & Robinson, L.L.P., for her Complaint against Reuters America, Inc., alleges as follows: ·

## THE PARTIES

1.     Plaintiff Michele Roach resides at 75 Carmen Hill, New Milford, Connecticut 06776. She was employed by Defendants from October 8, 2003 until November 8, 2004, as Account Manager in Reuter's Client Training department at Defendant Reuters America, Inc.

2.     Defendant Reuters America, Inc. ("Reuters") is an international multimedia news agency. Upon information and belief, Reuters is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the state of New York, located at 3 Times Square, New York, New York 10036-6564,

1

where Ms. Roach worked when she was employed with defendant. The Reuters Group consists of several companies and has 15000 staff in 94 countries, including some 2300 editorial staff in 197 bureaus serving approximately 130 countries.

## THE NATURE OF THE ACTION

3.     This is a civil action for damages and remedies brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the New York State Executive Law § 296 et seq. ("New York State Human Rights Law"); and the Administrative Code of the City of New York § 8-101 et seq. ("New York City Human Rights Law"). Specifically, Defendants discriminated against Ms. Roach because of her race and retaliated against her by terminating her employment when she complained about such discrimination.

## JURISDICTION & VENUE

4.     This Court has jurisdiction over this action under 28 U.S.C. § 1331.

5.     Ms. Roach filed charges of race discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 01, 2005.

6.     On March 22, 2006, Ms. Roach received a Dismissal and Notice of Right to Sue from the EEOC.

7.     Ms. Roach served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in this Court.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to plaintiff's claims occurred in the Southern District of New York.

## FACTS

9.     Ms. Roach is a white female. On September 24, 2004, Reuters hired her as an Account Manager in Reuter's Client Training department reporting to Heidi Salisbury. Ms. Roach performed a substantial portion of her work in New York City.

10.     As an Account Manager in Reuter's Client Training department, she was responsible for, among other things, training customers on how to proficiently use Reuter's live market data products in their businesses.

11.     Throughout her employment with Reuters, Ms. Roach was qualified for her position and performed her duties in a professional and competent manner.

12.     During Ms. Roach's employment, Ms. Salisbury engaged in conduct favoring African American employees over Caucasian employees even though the Caucasian employees were performing at a level at least as high as their African American colleagues.

13.     In or about March 2004, Ms. Salisbury directed Ms. Roach to begin working as a Client trainer of Reuter's products with one of Reuter's largest customers, the New York Stock Exchange ("NYSE"). At that time, Jackie Martin, an African American woman, was the lead Trainer and Ms. Roach was asked to support her.

14.     Shortly thereafter, Ms. Salisbury informed Ms. Roach that she was going to replace Ms. Martin as the lead Trainer on the floor of the NYSE.

3

15.     On March 10, 2004, while Ms. Roach was talking on the phone on the floor of the NYSE, Jackie Martin came behind her and viciously punched her in her left side and back. Ms. Martin then proceeded to leave as if nothing happened. Ms. Roach was left in severe pain and in fear of further assault by Ms. Martin.

16.     Ms. Roach immediately reported the incident to John Purvis, Reuter's Client Development Executive, and thereafter to Wes Schmidt, a Reuter's Sales Account Manager and Heidi Salisbury, Ms. Roach's manager. Despite her timely complaint, Reuters failed to conduct an investigation at that time into the incident as required under Reuter's employee handbook.

17.     Ms. Roach met with Ms. Salisbury about the incident later that same day. At no time did Ms. Salisbury ever inquire whether she needed any medical attention. Ms. Salisbury also denied her time-off from work to seek medical attention. Instead, Ms. Salisbury criticized Ms. Roach – not for poor performance – but for her apparent overly enthusiastic work ethic. At the same time, Ms. Salisbury neither disciplined nor questioned Ms. Martin about her conduct.

18.     Ms. Roach subsequently obtained medical attention for the physical pain she was experiencing in connection with Ms. Martin's assault. She was diagnosed with a contusion to her left lung and was put on a regimen of physical therapy by a pulmonary specialist.

19.     On March 11, 2004, Ms. Roach requested a meeting with Tom Browder, Reuters Vice President of Client Training and Ms. Salisbury's supervisor. She told Mr. Browder and Ms. Salisbury that as a result of the incident with Jackie Martin she was

afraid for her physical safety. Ms. Salisbury responded by laughing. Mr. Browder reminded Ms. Salisbury that this was no laughing matter.

20.     Rather than disciplining Ms. Martin or removing her from the floor of the NYSE, Reuters removed Ms. Roach from the floor of the NYSE and placed her in a lesser position.

21.     On March 16, 2004, Ms. Roach met with Michael Schmidt, Reuters Director of Human Resources, and advised him of the incident with Ms. Martin. The only response she received from her manager, Ms. Salisbury, was criticism.

22.     A few days later, Mr. Schmidt met with Jackie Martin about the incident. Mr. Schmidt reported back to Ms. Roach that Jackie Martin stated that she gave her a "love tap" and that she had overstated the extent of the physical contact. Mr. Schmidt told Ms. Roach his conclusion was that Ms. Martin's conduct was a friendly gesture.

23.     On or about October 28, 2004, Ms. Salisbury explained to Ms. Roach the basis of her reluctance to discipline or terminate African American employees under her management. Ms. Salisbury told her that even though an African American colleague under her supervision was performing poorly in her work, she (Ms. Salisbury) could not fire the other employee because she "did not have a big enough budget" to fight a race discrimination lawsuit. Therefore, Ms. Salisbury felt she had little or no ability to discipline or terminate this low performing African American employee.

24.     Ms. Salisbury also explained that Reuters management was particularly sensitive about any disciplinary actions or terminations of African American employees because the company was the subject, at that time, of a class action lawsuit by African American employees.

25.     On April 23, 2004, Ms. Roach submitted a three and half page letter to Reuters through prior counsel which made an unequivocal assertion of her rights under Title VII, asserted that Reuters was discriminating against her on the basis of race in the handling of her incident with Jackie Martin and requested that Reuters conduct a full and fair investigation and take no retaliatory action against her.

26.     On or about April 27, 2004, Reuters responded to her letter. Reuters stated in the letter, among other things, that the company "did not have conclusive evidence at this time that Jackie Martin punched or physically contacted [her] on March 10, 2004." Reuters, however, did not speak with people present at the time of the incident.

27.     After Ms. Roach submitted her April 23, 2004 letter to Reuters, Ms. Salisbury proceeded to ostracize and marginalize her in large and small ways. Ms. Salisbury stopped returning Ms. Roach's phone calls, would not advise Ms. Roach about her inability to attend meetings with her, and would simply cancel meetings with Ms. Roach at the last minute. Similarly, Ms. Salisbury failed to provide Ms. Roach with any assistance with technical resources despite repeated requests. Ms. Salisbury also refused to reimburse her for her expenses – which Ms. Roach tried to submit to Ms. Salisbury and had been approved by Tom Browder, Ms. Salisbury's direct supervisor. In short, Ms. Salisbury completely isolated Ms. Roach in her job.

28.     On August 11, 2004, Ms. Roach submitted an email communication to Tom Browder, Ms. Salisbury's supervisor, advising him of the problems she was facing with her manager, Heidi Salisbury, and requesting whether he could "guide [her] in reaching resolutions to these important issues."

29.    On August 16, 2004, Ms. Roach was advised that she had satisfied those objectives.

30.    Nonetheless, on November 8, 2004, Reuters terminated her employment.

31.    Upon information and belief, Ms. Roach was exposed to a continuing course of willful discrimination regarding her compensation, terms, conditions or privileges of employment on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended.

FIRST CAUSE OF ACTION

(Race Discrimination under Title VII)

32.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 31 as if separately set forth herein.

33.    At all relevant times, Plaintiff was an "employee" of Defendants under Title VII, 42 U.S.C. § 2000e(f).

34.    Upon information and belief, Defendants are "employers" under Title VII, 42 U.S.C. § 2000e(b).

35.    Defendants discriminated against Ms. Roach because of her race in violation of Title VII, 42 U.S.C. § 2000e-2(a), by the conduct described in this complaint, including by subjecting her to Ms. Salisbury's discriminatory treatment, issuing her a discriminatory performance review both orally and in writing, and by terminating her employment.

36.    As a result of Defendants' discrimination, Ms. Roach has suffered substantial damages, including lost wages and benefits and emotional distress, in an amount to be determined at trial.

37.    Upon information and belief, Defendants' retaliation was engaged in with malice and/or reckless indifference to Ms. Roach's federally protected rights. Ms. Roach is therefore entitled to punitive damages under Title VII.

## SECOND CAUSE OF ACTION

(Race Discrimination Under the New York State Human Rights Law)

38.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 37 as if separately set forth herein.

39.    At all relevant times, Plaintiff was an "employee" of Defendants for purposes of §§ 292 and 296 of the New York State Human Rights Law.

40.    On information and belief, Defendants are "employers" for purposes of § § 292 and 296 of the New York State Human Rights Law.

41.    Defendants discriminated against Ms. Roach because of her race in violation of § 296 of the New York State Human Rights Law by the conduct described in this complaint, including by subjecting her to Ms. Salisbury's discriminatory treatment, issuing her a discriminatory performance review both orally and in writing, and by terminating her employment.

42.    As a result of Defendants' discrimination, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits and punitive damages, in an amount to be determined at trial.

THIRD CAUSE OF ACTION

(Race Discrimination Under the New York City Human Rights Law)

43.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as if separately set forth herein.

44.    Plaintiff is a "person" under § 8-102(1) of the New York City Human Rights Law.

45.    On information and belief, Defendants are "employers" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

46.    Defendants discriminated against Ms. Roach because of her race in violation of § 8-107 of the New York city Human Rights Law, by the conduct described in this complaint, including by subjecting her to Ms. Salisbury's discriminatory treatment, issuing her a discriminatory performance review both orally and in writing, and by terminating her employment.

47.    As a result of Defendants' discrimination, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

48.    Upon information and belief, Defendants' discriminatory actions against Plaintiff were taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under the New York City Human Rights Law.

FOURTH CAUSE OF ACTION

(Retaliation Under Title VII)

49.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 as separately set forth herein.

50.     Ms. Roach opposed Defendants' unlawful, discriminatory employment practices and engaged in protected activity under Title VII by asserting that she was discriminated against in oral and written complaints she made to Defendants' agents, including Messrs. Purvis, Schmidt, Browder, and Ms. Salisbury.

51.     Defendants retaliated against Ms. Roach for having engaged in protected activity described in the preceding paragraph by (a) subjecting her to Ms. Salisbury's discriminatory treatment, including but not limited to the negative oral and written reviews Ms. Salisbury and Mr. Browder gave Ms. Roach during March through August 2004 and (b) terminating her employment on November 8, 2004.

52.     Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3.

53.     As a result of Defendants' retaliation, Ms. Roach has suffered substantial damages, including lost wages and benefits and emotional distress, in an amount to be determined at trial.

54.     Upon information and belief, Defendants' retaliation was engaged in with malice and/or reckless indifference to Ms. Roach's federally protected rights. Ms. Roach is therefore entitled to punitive damages under Title VII.

## FIFTH CAUSE OF ACTION

### (Retaliation under the New York State Human Rights Law)

55.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 54 as if separately set forth herein.

56.     Ms. Roach opposed Defendants' unlawful, discriminatory employment practices and engaged in protected activity under the New York State Human Rights Law by asserting that she was being discriminated against in oral and written complaints she made to Defendants' agents, including Messrs. Purvis, Schmidt, Browder, and Ms. Salisbury.

57.     Defendants retaliated against Ms. Roach for having engaged in the protected activity described in the preceding paragraph by (a) subjecting her to Ms. Salisbury's discriminatory treatment, including but not limited to the negative oral and written reviews Ms. Salisbury and Mr. Browder gave Ms. Roach during March through August 2004 and (b) terminating her employment on November 8, 2004.

58.     Defendants' actions constitute discrimination and retaliation against Plaintiff in violation of the New York State Human Rights Law, § 296.

59.     As a result of Defendants' retaliation, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits and punitive damages, in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (Retaliation Under the New York City Human Rights Law)

60.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 as if separately set forth herein.

61.     Ms. Roach opposed Defendants' unlawful, discriminatory employment practices and engaged in protected activity under the New York City Human Rights Law by asserting that she was being discriminated against in oral and written complaints she made to Defendants' agents, including Messrs. Purvis, Schmidt, Browder, and Ms. Salisbury.

62.     Defendants retaliated against Ms. Roach for having engaged in protected activity described in the preceding paragraph by (a) subjecting her to Ms. Salisbury's discriminatory treatment, including but not limited to the negative oral and written reviews Ms. Salisbury and Mr. Browder gave Ms. Roach during March through August 2004 and (b) terminating her employment on November 8, 2004.

63.     Defendant's actions constitute discrimination and retaliation against Plaintiff in violation of the New York City Human Rights Law, § 8-107.

64.     As a result of Defendants' retaliation, Plaintiff has suffered substantial damages, including but not limited to mental distress and lost wages and benefits, in an amount to be determined at trial.

65.     Upon information and belief, Defendants' retaliatory actions against Plaintiff were taken with reckless indifference to Plaintiff's rights, entitling her to punitive damages under the New York City Human Rights Law.

WHEREFORE, while reserving the right to seek additional damages as available, Plaintiff demands judgment against Defendants as follows:

A.       On the First Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

B.       On the Second Cause of Action, back pay and benefits and front pay and benefits, plus compensatory damages, costs and interest, all in amounts to be determined at trial;

C.       On the Third Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

D.       On the Fourth Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

E.       On the Fifth Cause of Action, back pay and benefits and front pay and benefits, plus compensatory damages, costs and interest, all in amounts to be determined at trial;

F.  On the Sixth Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

G.  Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
     June 19, 2006

         LIDDLE & ROBINSON, L.L.P.

         By:_____
         Marc A. Susswein (MS 9084)
         David Marek (DM 2083)
         Attorneys for Plaintiff
         800 Third Avenue
         New York, New York 10022
         (212) 687-8500